No. 24-8033

_____

# UNITED STATES COURT OF APPEALS
# FOR THE FIRST CIRCUIT

_____

NATALIA ORTIZ,
on behalf of herself and all others similarly situated,

Plaintiff-Respondent,

v.

SABA UNIVERSITY SCHOOL OF MEDICINE, and R3 EDUCATION, INC.,

Defendants-Petitioners.

_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
(The Honorable William G. Young, Case No. 1:23-cv-12002-WGY)

_____

## Opposition to Petition to Appeal
## Pursuant to Federal Rule of Civil Procedure 23(f)

_____

Daryl J. Lapp (First Cir. Bar No. 31763)
LOCKE LORD LLP
111 Huntington Avenue, Boston, MA  02199
(617) 239-0100
daryl.lapp@lockelord.com

Michael McMorrow (First Cir. Bar No. 1214113)
LOCKE LORD LLP
111 S. Wacker Drive, Chicago, IL 60606
(312) 443-0246
michael.mcmorrow@lockelord.com

*Counsel for Defendants-Petitioners*

## <u>CORPORATE DISCLOSURE STATEMENT</u>

Saba University School of Medicine is owned by Saba University School of Medicine B.V., a privately held company. Saba University School of Medicine B.V. is wholly owned by Saba University Management Company B.V., a privately held company. Saba University Management Company B.V. is wholly owned by R3 Education, Inc., a privately held company. R3 Education, Inc. is wholly owned by Trinity BidCo LLC, a privately held company. Trinity BidCo, LLC is wholly owned by Trinity HoldCo Ltd. (UK), a privately held company. Trinity HoldCo Ltd. (UK) is wholly owned by Global University Systems Holding BV, a privately held company. There is no publicly held company that owns, directly or indirectly, 10% or more of Saba University School of Medicine B.V. or R3 Education, Inc.'s stock.

## <u>TABLE OF CONTENTS</u>

BACKGROUND ........................................................................................1

REASONS FOR DENYING THE PETITION .......................................2

    I.     Standard of Review ..............................................................2

    II.    Petitioner Fails to Demonstrate Any "Important and Unsettled Issue" For this Court to Resolve. ...........................................3

    III.   The District Court's Decision is Neither the "Death Knell" of Petitioner's claim nor a "Questionable" Decision. ..............................6

         A.    The Bell to Sound the "Death Knell" Has Not Rung. ..............7

         B.    The District Court's Ruling is Not "Questionable" ..................9

    IV.   The District Court Correctly Determined that Plaintiff's Damages Model is Inapposite to Her Classwide Claims. .................17

CONCLUSION .......................................................................................19

ATTACHMENTS
    Memorandum and Order (Dkt. 134)

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Algarin v. Maybelline, LLC*,
2014 WL 690410 (S.D. Cal. Feb. 21, 2024)..........................................8

*Aronstein v. Mass. Mut. Life Ins. Co.*,
15 F.4th 527 (1st Cir. 2021)...................................................3

*Bezdek v. Vibram USA*,
79 F. Supp. 3d 324 (D. Mass. 2015)................................................16

*Boos v. Abbott Labs*,
925 F. Supp. 49 (D. Mass. 1996)..................................................11

*Bradach v. Pharmavite, LLC*,
735 F. App'x 251 (9th Cir. 2018)................................................13

*Bushkin Assocs., Inc. v. Raytheon Co.*,
393 Mass. 622 (1985) ...........................................................12

*Camey v. Force Factor, LLC*,
No. 14-14717-RWZ, 2016 WL 10998440 (D. Mass. May 16, 2016).................9

*Comcast Corp. v. Behrend*,
569 U.S. 27 (2013)..............................................................18

*Commonwealth v. Corinthian College*,
No. 2014-1093-E, at 2, 5 (Mass. Super. Aug. 1, 2016).....................19

*Cristostomo v. New Balance Athletics, Inc.*,
647 F. Supp. 3d 1 (D. Mass. 2022)..........................................5, 6, 11

*F.T.C. v. Figgie Int'l, Inc.*,
994 F.2d 595 (9th Cir. 1993) ...................................................19

*F.T.C. v. Kuykendall*,
371 F.3d 745 (10th Cir. 2004) .................................................19

*F.T.C. v. Trudeau*,
  579 F.3d 754 (7th Cir. 2009) ...............................................................19

*Faherty v. CVS Pharmacy, Inc.*,
  No. No. 09–CV–12102, 2011 WL 810178 (D. Mass. Mar. 9, 2011)..................9

*Fed. Home Loan Bank of Bos. v. Ally Fin., Inc.*,
  2013 WL 5466628 (D. Mass. Sept. 30, 2013)........................................13, 15, 16

*Fed. Home Loan Bank of Bos. v. Ally Fin., Inc.*,
  2019 WL 4739263 (Mass. Super. Aug. 29, 2019).............................................16

*Feingold v. John Hancock Life Ins. Co. (USA)*,
  No. CIV.A. 13-10185-JLT, 2013 WL 4495126 (D. Mass. Aug. 19,
  2013), *aff'd*, 753 F.3d 55 (1st Cir. 2014) .............................................9

*Foisie v. Worcester Polytechnic Inst.*,
  967 F.3d 27 (1st Cir. 2020)..................................................................12

*Geis v. Nestle Waters N. Am., Inc.*,
  321 F. Supp. 3d 230 (D. Mass. 2018)........................................................11, 12

*Goebel v. Schmid Bros.*,
  871 F. Supp. 68 (D. Mass. 1994)...............................................................13, 14

*In re Hardesty*,
  2018 WL 7046869 (6th Cir. Nov. 13, 2018) ...............................................7

*Herbert v. Vantage Travel Serv., Inc.*,
  334 F.R.D. 362 (D. Mass. 2019)...............................................................16

*Hershenow v. Enterprise Rent-A-Car Company of Boston, Inc.*,
  445 Mass. 790 (2006) ...........................................................................18

*Himler v. Comprehensive Care Corp.*,
  1993 WL 132941 (4th Cir. Apr. 28, 1993).................................................7

*Holbrook v. Bos. Sci. Corp.*,
  487 F. Supp. 3d 100 (D. Mass. 2020)........................................................15

*Levy v. Gutierrez*,
  448 F. Supp. 3d 46 (D.N.H. 2019)............................................................18

*In re M3 Power Razor*,
    270 F.R.D. 45 (D. Mass. 2010) ........................................................................ 16

*Makaeff v. Trump Univ.*,
    LLC, 309 F.R.D. 631 (S.D. Cal. 2015) ....................................................... 18, 19

*McGregor v. Chierico*,
    206 F.3d 1378 (11th Cir. 2000) ...................................................................... 19

*In Re: Moveit Customer Data Security Breach Litigation*,
    No. 1:23-md-3083 ............................................................................................ 13

*Nightingale v. Nat'l Grid USA Serv. Co., Inc*,
    107 F.4th 1 (1st Cir. 2024) ................................................................................ 2

*In re Pharm. Indus. Avg. Wholesale Price Litig*.,
    230 F.R.D. 61 (D. Mass. 2005) .......................................................................... 9

*Ramirez v. Geo Grp*.,
    2019 WL 6782920 (S.D. Cal. Dec. 11, 2019) ................................................... 8

*Resolute Mgmt. Inc. v. Transatlantic Reinsurance Co.*,
    87 Mass. App. Ct. 296 (2015) .......................................................................... 12

*Romulus v. CVS Pharmacy, Inc.*,
    No. 17-8024, 2017 WL 7310384 (1st Cir. Dec. 21, 2017) ................................. 3

*Share v. Air Properties G., Inc.*,
    538 F.2d 279 (9th Cir. 1976) ............................................................................. 8

*Southern States Police Benev. Ass'n, Inc. v. First Choice Armor &
    Equip., Inc*.,
    241 F.R.D. 85 (D. Mass. 2007) .......................................................................... 9

*Sumitomo Copper Litig. v. Credit Lyonnais Rouse, Ltd.*,
    262 F.3d 134 (2d Cir. 2001) .............................................................................. 6

*Utopia Entm't v. Claiborne Parish*,
    2006 WL 680648 (W.D. La. Mar. 14, 2006) ..................................................... 7

*Vara v. DeVos*,
    2020 WL 3489679 (D. Mass. June 25, 2020) .................................................. 19

*Viscito v. National Plan. Corp.*,
34 F.3d 78 (1st Cir. 2022)...................................................................10

*Waste Mgmt. Holdings, Inc. v. Mowbray*,
208 F.3d 288 (1st Cir. 2000).............................................2, 3, 6, 7, 8

*Woode v. R3 Education, Inc. d/b/a Saba Univ. Sch. of Medicine*,
No. 2381CV00982 (Mass. Super., filed Apr. 7, 2023)...................8, 20

**STATUTES AND RULES**

Fed. R. App. P. 5 ....................................................................................1

Fed. R. App. P. 32 ..................................................................................1

Fed. R. Civ. P. 23 ...................................................3, 6, 11, 17, 18, 19

**TREATISES AND COMMENTARY**

Milner, *From Rancid to Reasonable: Unfair Methods of Competition
Under State Little FTC Acts*, 73 Am. U. L. Rev. 857, 857 (2024)....................12

Restatement (Second) of Conflict of Laws.......................9, 10, 12, 13, 14

**OTHER AUTHORITIES**

Jordan Elias, *The Multistate Problem in Consumer Class Actions and
Three Solutions* ..................................................................................13

Defendants-Respondents Saba University School of Medicine and R3 Education, Inc. (collectively, "Saba") oppose the Petition for Review filed by Plaintiff-Petitioner Natalia Ortiz ("Petition").

## BACKGROUND

Petitioner filed her Motion for Class Certification (the "Motion") in this matter without any discussion of what law should apply to the claims of the proposed class members, who hail from dozens of jurisdictions throughout the United States and the world. The Motion simply assumed that Massachusetts law would apply, but made no attempt to explain why it should. Even after Saba pointed out the choice-of-law issues in its opposition brief, Petitioner made no attempt to identify the relevant jurisdictions, analyze their laws, or demonstrate that the variations in state law did not overcome the factual and legal issues shared by the putative class members.

The district court held oral argument on Petitioner's Motion on September 17, 2024. At the time, the court indicated it was inclined to certify a class. After some consideration, however, the court reconsidered its earlier inclination and issued its Memorandum and Order on Nov. 26, 2024. *See* Memorandum and Order, attached as Exhibit 1 (the "Order"). The Order decertified the proposed class, finding that Petitioner "has not conducted any analysis of state law variation, and therefore fails to meet her burden of demonstrating that the variations in state

laws do not overcome common legal issues." Ex. 1 at 22. The Order also observed that Plaintiff's full refund model was inapposite to her classwide claims because it was not the most accurate measure of damages and would overcompensate the class if the model did not account for the residual value of the education. *Id.* at 23-24.

Petitioner does not argue on appeal that the district court erred in finding that she engaged in no analysis of state law variations. Instead, she asks this Court to find that it was an error of law to even require the analysis in which she refused to engage. This Court need not accept Petitioner's argument. Petitioner similarly fails to show error in the district court's rejection of her full refund model of damages. The Petition should be denied.

## REASONS FOR DENYING THE PETITION

### I.   Standard of Review

Class certification rulings are reviewed for abuse of discretion. *Nightingale v. Nat'l Grid USA Serv. Co., Inc*, 107 F.4th 1, 11 (1st Cir. 2024). A court abuses its discretion when it "relies significantly on an improper factor, omits a significant factor, or makes a clear error of judgment in weighing the relevant factors," or when it "adopts an incorrect legal rule." *Id.* (internal quotations omitted); *see also Waste Mgmt. Holdings, Inc. v. Mowbray*, 208 F.3d 288, 295 (1st Cir. 2000). Legal questions are reviewed *de novo*, and factual determinations are reviewed for clear

error. *See Aronstein v. Mass. Mut. Life Ins. Co.*, 15 F.4th 527, 534-35 (1st Cir. 2021).

*Mowbray* described three categories of cases that warrant discretionary review: (1) "when a denial of class status effectively ends the case"; (2) "when the grant of class status raises the stakes of the litigation so substantially that the defendant likely will feel irresistible pressure to settle"; or (3) when "an appeal will permit the resolution of an unsettled legal issue that is important to the particular litigation as well as important in itself and likely to escape effective review if left hanging until the end of the case." *Mowbray,* 208 F.3d at 293–94.

A petitioner proceeding under the first category also must "demonstrate that the district court's ruling on class certification is questionable—and must do this taking into account the discretion the district judge possesses in implementing Rule 23, and the correspondingly deferential standard of appellate review." *Id*. (internal quotations omitted). This Court has since noted that a petition must identify some portion of the certification "analysis that is sufficiently 'questionable' to warrant immediate review by this [C]ourt." *Romulus v. CVS Pharmacy, Inc.*, No. 17-8024, 2017 WL 7310384, at *1 (1st Cir. Dec. 21, 2017).

## II.    Petitioner Fails to Demonstrate Any "Important and Unsettled Issue" For this Court to Resolve.

Petitioner's first argument is that review is warranted "to clarify an 'unsettled legal issue…'" Pet. at 9. There is no unsettled legal issue. The Order

does not hold, as Petitioner claims, that "Massachusetts-based entities" can be liable under Chapter 93A only "if the injured consumers were harmed or reside within Massachusetts." *See id*. That question was never even raised below.[1] What the Order held was that Petitioner "has not conducted any analysis of state law variation, and therefore fails to meet her burden of demonstrating that the variations in state laws do not overcome common legal issues." *See* Ex. 1 at 22. Therefore, she "failed to meet her burden of demonstrating that Massachusetts law applies." *Id*. at 23.

The District Court's holding is correct; Petitioner attempted to certify a class of former students from 40 states and 13 foreign nations. Ex. 1 at 19 n.4. Petitioner

---

[1] In the introduction to her argument, Petitioner frames the "important question" she asks the court to address as "whether a chapter 93A class action is an appropriate way to hold Massachusetts defendants accountable for unfair and deceptive conduct emanating from Massachusetts, when that conduct harms out-of-state consumers." Pet. at 8. But Petitioner failed to demonstrate that any of the conduct of which she complains was "emanating from Massachusetts." Her Memorandum in Support of Motion for Class Certification contains no reference to where anything happened nor any evidence of it; she made no attempt to demonstrate a connection to Massachusetts until her Reply. The first sentences of her two introductions are informative:

> Saba is a for-profit medical school located on Saba Island in the Dutch Caribbean that recruits students from the United States and around the world. (Dkt. 51, at 1)

> From their corporate headquarters in Massachusetts, Defendants devised and implemented a scheme to mislead …. (Dkt. 82, at 1).

Despite her sudden interest in the place where Defendants acted, Plaintiff's Reply referenced no evidence that any activities of which she complains occurred in Massachusetts. Each of the Petition, the Reply, and the (pending) Opposition to Motion for Summary Judgment below claim that Defendants took all the following actions in this case "[f]rom their headquarters in Massachusetts." Those actions were that the Defendants "crafted" and "posted" the "misleading" USMLE representations, "drafted training materials," and "misled and lied to" prospective students. Pet. at 17-18. *See* Dkt. 82, at 5-6; Dkt. 139, at 9-10. But nothing she cites demonstrates that any actions in this case occurred in Massachusetts.

did not identify those jurisdictions; instead she asserted that Massachusetts law applies simply because one of the defendants is located there. Petitioner introduced no evidence to show that any of the actions taken by either defendant occurred in Massachusetts, that any purported class member had contacts with Massachusetts, or even where any of the class members lived.

Petitioner suggests that failure to review the Order would be a "finding that Chapter 93A does not protect the citizens of other jurisdictions from misconduct by Massachusetts entities" and this would "undercut the purpose of Chapter 93A." Pet. at 9. It would not. The district court did not make any finding that Chapter 93A cannot apply to citizens of other states, and denial of the Petition would not be such a finding by this Court.

Petitioner claims that Chapter 93A does not require a plaintiff to reside in Massachusetts or for the defendant's activity to have occurred in Massachusetts for Chapter 93A to apply. Pet. at 10. She cites one case to support this notion. Although *Cristostomo v. New Balance Athletics, Inc.*, 647 F. Supp. 3d 1, 14 (D. Mass. 2022) does state that Ch. 93A "does not require a plaintiff to reside in Massachusetts," that court made that statement in denying a motion to strike class allegations where the plaintiff raised both a federal and a state claim. It did not address choice-of-law principles in any manner and did not certify a class. No class was ever certified in the case, nor was a certification motion even filed. The case

was dismissed on an individual basis. *See Cristostomo*, No. 1:21cv12095, Dkt. 77 (D. Mass. May 10, 2024). Petitioner's references to Massachusetts' policy in favor of class actions is meaningless. This is a federal court; the relevant procedural rules governing class actions are embodied in Rule 23 and the cases interpreting it.

There simply is no "unsettled legal issue" in the Order. The Order made a straightforward application of Massachusetts' choice-of-law rules and followed an "unbroken string of opinions" in the district all "declining to extend Chapter 93A to multistate classes." *See* Section III(B), *infra.* This is the same analysis that the same district court made in *Waste Mgmt. Holdings, Inc. v. Mowbray*, 208 F.3d 288 (1st Cir. 2000). In *Mowbray*, the district court assessed the variations in state law and certified a class despite them. *Id.* at 291-292. This Court approved the district court's choice-of-law analysis in *Mowbray*, acknowledged the lack of uniformity [in state law], and explained why the limitations problems nonetheless appeared to be inconsequential." 208 F.3d at 296. Petitioner here gave the court no basis on which to engage in any choice-of-law analysis; she never identified any of the jurisdictions. Petitioner's argument that there is an "unsettled" issue of law fails.

## III. The District Court's Decision is Neither the "Death Knell" of Petitioner's claim nor a "Questionable" Decision.

Courts that apply a "death knell" analysis to Rule 23(f) review do so because the claims are not economical to litigate individually. *See Sumitomo Copper Litig. v. Credit Lyonnais Rouse, Ltd.*, 262 F.3d 134, 138 (2d Cir. 2001) (explaining that

the "death knell" doctrine arises when a "class certification order effectively terminates the litigation…because the denial of certification makes the pursuit of individual claims prohibitively expensive"). Although this Circuit does not follow that doctrine, the related test from *Mowbray* is similar. One scenario where review is warranted under 23(f) is "when a denial of class status effectively ends [a] case" and the plaintiff can "demonstrate that the district court's ruling on class certification is questionable." *Mowbray*, 208 F.3d at 293.

### A.   The Bell to Sound the "Death Knell" Has Not Rung.

Petitioner fails the first part of the test, for two reasons. First, denial of class certification did not "effectively end" her case. Despite denial of certification, Petitioner later filed a 20-page Opposition to Motion for Summary Judgment and a 40-page Counterstatement of Material Facts. Dkt. 139, 140. She obviously does not consider this case over. When the litigation is still active, the courts applying the "death knell" test find it inapplicable. *See In re Hardesty*, 2018 WL 7046869, *1 (6th Cir. Nov. 13, 2018) ("denial of class certification is not the death knell of the litigation"); *Himler v. Comprehensive Care Corp.*, 1993 WL 132941, *2 (4th Cir. Apr. 28, 1993) (finding that certification denial had no effect on underlying individual claims); *Utopia Entm't v. Claiborne Parish*, 2006 WL 680648, *1 (W.D. La. Mar. 14, 2006) ("exception does not apply" when "litigation will proceed").

Moreover, Petitioner's claim is not so small that it "is not of a sufficient magnitude to warrant the costs of stand-alone litigation." *Mowbray*, 208 F.3d at 293.[2] Petitioner does not state the amount of her claim in the petition, for obvious reasons. Petitioner claims—for herself alone—damages of $155,000.00 in payments and loans, "double or treble" that amount in statutory damages, plus attorneys' fees and costs. Dkt. 1, ¶¶ 85, 126. The continued economic viability of Petitioner's claim as an individual case is demonstrated by her friend and classmate, who is pursuing the same claim individually against Saba, and filed his individual suit before Petitioner later filed her class suit. *Woode v. R3 Education, Inc. d/b/a Saba Univ. Sch. of Medicine*, No. 2381CV00982 (Mass. Super., filed Apr. 7, 2023).

Petitioner also claims that the district court's finding that she is not entitled to a "full refund" of her "tuition, costs and fees" further rings the bell causing a "death knell." Pet. at 12. It does not. *See Share v. Air Properties G., Inc.*, 538 F.2d 279, 283 (9th Cir. 1976) (refusing to apply "death knell" even though claim was discounted to 40% of a $44,752.50 share, because "the claim is still for $17,901.

---

[2] In the courts that employ it, the "death knell" theory is reserved for truly *de minimis* damages claims. *Compare Algarin v. Maybelline, LLC*, 2014 WL 690410, *2 (S.D. Cal. Feb. 21, 2024) ("In the instant case, it is likely that denial of class certification will sound the 'death knell' of the litigation, as Plaintiffs have only alleged de minimis individual damages [of $10 to $22 dollars]"), with *Ramirez v. Geo Grp.*, 2019 WL 6782920, *3 (S.D. Cal. Dec. 11, 2019) ("Denial of class certification would not constitute the 'death knell' of this action. This is not a situation in which the individual plaintiffs have suffered de minimis harm. As GEO acknowledged when it removed this case from state court, Ramirez's individual claims alone exceed $145,000.").

This falls in the clearly viable range"). The fact that Petitioner cannot get everything she wants is not the "death knell" of her case. Petitioner has pointed to nothing other than her own conclusion to support the idea that her diminished claim is no longer viable, and she is continuing to litigate it.

## B.     The District Court's Ruling is Not "Questionable"

Even if Petitioner had demonstrated that denial of certification "effectively ends" her case, she fails to demonstrate that the district court's ruling is "questionable." The district court followed an "unbroken string of opinions" in the district all "declining to extend Chapter 93A to multistate classes." Ex. 1 at 20, citing *Camey v. Force Factor, LLC*, No. 14-14717-RWZ, 2016 WL 10998440, at *2–3 (D. Mass. May 16, 2016); *In re Pharm. Indus. Avg. Wholesale Price Litig*., 230 F.R.D. 61, 83 (D. Mass. 2005); *Faherty v. CVS Pharmacy, Inc*., No. No. 09–CV–12102, 2011 WL 810178, at *5 (D. Mass. Mar. 9, 2011); *Southern States Police Benev. Ass'n, Inc. v. First Choice Armor & Equip., Inc*., 241 F.R.D. 85, 93 (D. Mass. 2007); *Feingold v. John Hancock Life Ins. Co. (USA),* No. CIV.A. 13-10185-JLT, 2013 WL 4495126, at *3 (D. Mass. Aug. 19, 2013), *aff'd*, 753 F.3d 55 (1st Cir. 2014).[3] All of these cases applied Massachusetts choice-of-law principles to the facts of the particular case, guided by the RESTATEMENT (SECOND) CONFLICT

---

[3] Petitioner makes no effort to confront these authorities.

OF LAWS, and found under those principles that the law of the home states of the class members applied. The district court did the same here.

Petitioner calls the district court's ruling "questionable," but fails to even cite the six-factor test from RESTATEMENT § 148 that the district court applied, nor the "overarching principles" of RESTATEMENT § 6 that the district court analyzed as a guiding factor. Courts are "explicitly guided" by the RESTATEMENT in analyzing Massachusetts choice-of-law, as the district court noted. *See* Ex. 1 at 16, citing *Viscito v. National Plan. Corp.*, 34 F.3d 78, 83 (1st Cir. 2022). The district court, appropriately, applied Section 148 to the facts of this case and determined that "the guiding factors of Section 148(2) point to the application of the laws of the plaintiffs' home states," Ex. 1, at 19-20,[4] as did the many cases it followed.

Rather than address the Order head on, Petitioner instead engages in a diversionary ten-page diatribe, misrepresenting the authorities she cites and the facts of this case, to impugn the legal analysis of the district court. But unpacking her authorities lays bare the infirmities in her rambling argument. Petitioner opens

---

[4] In doing so, the district court even credited Massachusetts as being the place where the "alleged misrepresentations were created and disseminated from," when it is not. Ex. 1 at 19. This erroneous conclusion credited Petitioner's characterization of Massachusetts as the place where these actions took place despite no evidence to support that conclusion. Because the court nonetheless correctly determined that Massachusetts law did not apply to the class members' claims, it was not a meaningful error, and because Petitioner did not the raise the issue of where Defendants' actions occurred in class certification, there was no reason to brief it. But Petitioner has no evidence to support the idea that any actions took place in Massachusetts, and the evidence demonstrates that none did. *See* Mem. In Support of Mot. for Summary J., Dkt. 121, at 2-4 (discussing lack of evidence of actions taken in Massachusetts).

10

with a bait and switch. She claims that "Massachusetts' choice-of-law rules favor the classwide application of Chapter 93A." Pet. at 13. They do not, nor can they. Classwide application of any law is normally a matter of civil procedure—for example, Rule 23. Massachusetts may favor classwide application of Chapter 93A, but that is not a matter of its choice-of-law rules. Massachusetts choice-of-law rules do not concern themselves with whether a case is an individual or class claim, and Petitioner points to no authority which suggests they do.

Petitioner's citation to caselaw is disingenuous. To start, she claims that "Massachusetts courts routinely permit out-of-state consumers to assert Chapter 93A claims…against in-state defendants." Pet. at 13. The cases she cites do not support that claim. The first, *Boos v. Abbott Labs*, 925 F. Supp. 49 (D. Mass. 1996), in no way supports Petitioner's argument. That case involved a class limited to Massachusetts residents. *Boos*, 925 F. Supp. at 50. Moreover, although Petitioner claims that the case "removed any geographic restriction on consumer actions," (Pet. at 13) it did not. As that court stated, "the legislature deleted the provision which limited the scope of Section 2 to acts occurring 'primarily and substantially' within Massachusetts." *Boos*, 925 F. Supp. at 55. The case had nothing to do with whether Chapter 93A could apply to residents of other states.[5]

---

[5] As discussed above, *Cristostomo*, 647 F. Supp. 3d at 14, did not address choice-of-law in any manner. Similarly, *Geis v. Nestle Waters N. Am., Inc.,* 321 F. Supp. 3d 230, 241 (D. Mass. 2018) did not address choice-of-law; the issue in that case was standing, and the court noted that the

Petitioner takes issue with the district court's choice-of-law analysis, claiming its reliance on the Restatement was "legally incorrect" and "contravenes Massachusetts' 'functional approach' to choice of law." Pet. at 14. But the cases Petitioner cites to support the idea of rejecting a "categorical approach" support the district court's Order, and also look to the Restatement for guidance.[6]

The Petition relies on two law review articles as support, rather than the extensive body of law that led to development of the RESTATEMENT or the cases applying it. Neither helps the argument. The first, Milner, *From Rancid to Reasonable: Unfair Methods of Competition Under State Little FTC Acts*, 73 Am. U. L. Rev. 857, 857 (2024) does not support Petitioner's statement that "Section 148's guidance is focused on common law fraud and misrepresentation claims

---

parties cited "no cases that squarely deal with the standing issue under chapter 93A." *Geis*, 321 F. Supp. 3d at 241. Here, the district court cited cases that "squarely deal" with choice-of-law, and whether a  plaintiff has standing to bring a claim is a separate question from whether the law applies to that claim.

[6] *Resolute Mgmt. Inc. v. Transatlantic Reinsurance Co.*, 87 Mass. App. Ct. 296, 302 (2015), states that "We look to the Restatement (Second) of Conflict of Laws for guidance." *Foisie v. Worcester Polytechnic Inst.*, 967 F.3d 27 (1st Cir. 2020), similarly, stated that Massachusetts looks "to the Restatement (Second) of Conflict of Laws as [o]ne obvious source of guidance," and applied Section 145's "most significant relationship" test to the conflict. *Foisie*, 967 F. 3d at 41. That is no different than this Court's application of Section 6's identical test and does nothing to detract from applying Section 148's six-part test to misrepresentations, as this Court and every court before it has done. *Bushkin Assocs., Inc. v. Raytheon Co.*, 393 Mass. 622, 637 (1985), does nothing to suggest that the Restatement guidance is inapplicable; that case involved application of the statute of frauds and the question of whether the transaction occurred "primarily and substantially within the commonwealth" for purposes of former Section 3(1)(b) of Chapter 93A, which no longer exists.

rather than "little FTC Acts" like Chapter 93A." Pet. at 16. Nowhere does that article reference either Section 148 or common law fraud.

Petitioner also claims that Chapter 93A claims "are 'ideal for class certification'" because of their focus on the defendant's conduct," *id.*, citing as support Jordan Elias, *The Multistate Problem in Consumer Class Actions and Three Solutions*, 17 Harv. L. & Pol'y Rev. 301, 317-18 (2022). Mr. Elias' support for making that statement is a single unreported case from the Ninth Circuit, *Bradach v. Pharmavite, LLC*, 735 F. App'x 251, 254-55 (9th Cir. 2018), that addressed only California law. *Bradach*, 735 F. App'x at 255. Neither Mr. Elias's article nor the Petition attempt to demonstrate any similarity between California and Massachusetts law. Petitioner also fails to mention that Mr. Elias is not an academic, but a plaintiff's class action lawyer who has been cocounsel with her attorneys at Berman Tabacco in eight different federal class actions. Four of those, including an MDL in Massachusetts, *In Re: Moveit Customer Data Security Breach Litigation*, No. 1:23-md-3083, are currently pending. Mr. Elias was also plaintiff's counsel in thirteen cases cited in his article, which was obviously written with an eye towards his own interests.

Petitioner then suggests that courts have rejected "mechanically" applying RESTATEMENT § 148, citing *Fed. Home Loan Bank of Bos. v. Ally Fin., Inc.*, 2013 WL 5466628, at *1 (D. Mass. Sept. 30, 2013) and *Goebel v. Schmid Bros.*, 871 F.

Supp. 68 (D. Mass. 1994). *Goebel* did not, as Petitioner claims, "find[] Section 148 deficient under Supreme Judicial Court precedent." *See* Pet. at 17. In that case, the first factor under Section 148—"where the plaintiff acted in reliance on defendant's representations" pointed to three different places—"Massachusetts, New York, and Germany." *Goebel*, 871 F. Supp at 76. Because the test did not give a clear answer under the facts of that case, the court turned to the more general test of Section 6. The district court here similarly "analyze[d] these [Section 148] factors in light of Restatement § 6," Ex. 1, at 20-21, before determining that "the laws of the home states of the consumers govern," in decertifying the class. *Id*. at 20.

Petitioner then, as noted above, attempts to cite the record to support the idea that the Defendants took all the actions in this case "from their headquarters in Massachusetts," Pet. at 17, but as also noted, the record fails to demonstrate that any actions in this case took place in Massachusetts. Even though the district court took Petitioner's false assertions regarding Massachusetts contacts at face value, it still held, in accordance with the RESTATEMENT tests, that the state with the "most significant relationship" with each class member is that class member's home state, not Massachusetts. Ex. 1, at 16, 20. As the court noted, although the places where the defendant made the representations is "approximately as important" as where the plaintiff received them, the place where the plaintiff relied on the representations is "more important." Ex. 1 at 19 (citing RESTATEMENT §148, cmt.

14

g). Because the class members relied on the representations in their home states/countries, and because universal application of Massachusetts law could undermine local interests of the other jurisdictions, the district court held, under Restatement §§ 6 and 148, that the "laws of the home states of the consumers govern." Ex. 1 at 20-21.

Petitioner misleadingly cites *Holbrook v. Bos. Sci. Corp.*, 487 F. Supp. 3d 100 (D. Mass. 2020) to support the statement that Massachusetts "has a greater interest" in applying Chapter 93A to Ms. Ortiz's claim. Pet. at 18-19. *Holbrook* did not apply Chapter 93A or Massachusetts substantive law at all. It applied Massachusetts' choice-of-law analysis to the *statute of limitations*, and noted that the "focus of this choice-of-law analysis is on the timeliness of the action, rather than the underlying claim." *Holbrook*, 487 F. Supp. 3d at 105–06. On limitations, it followed the Restatement and applied Massachusetts law, finding that no other state had a "dominant interest in having its own limitations statute enforced." *Id.* at 105. The court still applied the substantive law of Louisiana to the underlying claim. *Id.* at 107, 111. Petitioner also relies upon *Fed. Home Loan Bank of Bos.*, 2013 WL 5466628, at *1, to support the notion that "the law of the state where the corporate defendant conducted its business should apply." Pet. at 19. That case dealt with a highly specific quirk in choice-of-law. It found that "New York has a strong interest in overseeing the conduct of financial institutions operating within

15

its borders." *Fed. Home Loan Bank of Bos.*, 2013 WL 5466628, *2. It also found that the ratings at issue were not communicated to the Massachusetts plaintiffs directly. Even so, that court's analysis was rejected and overturned when the case was remanded to Massachusetts state court. *Fed. Home Loan Bank of Bos. v. Ally Fin., Inc.*, 2019 WL 4739263, at *7 (Mass. Super. Aug. 29, 2019). The state-court applied Massachusetts law to the statements received in Massachusetts, "where the impact of the alleged misrepresentations will be experienced," and followed the Restatement § 148 factors already discussed.

Petitioner then claims that "multiple courts have recognized the propriety of nationwide class actions under Chapter 93A." Pet. at 20. The cases do not support her argument. Petitioner cites to *Herbert v. Vantage Travel Serv., Inc.*, 334 F.R.D. 362, 374 (D. Mass. 2019), as authority, Pet. at 20, but she did not cite it below. Had she done so, Saba would have correctly noted *Hebert* never discussed choice-of-law, suggesting it was never raised. Petitioner also cites *Bezdek v. Vibram USA*, 79 F. Supp. 3d 324, 339 (D. Mass. 2015), and *In re M3 Power Razor*, 270 F.R.D. 45, 56 (D. Mass. 2010), as authority for certifying nationwide classes under Massachusetts law. Pet. at 20. Both were settlements. And even though the district court gave credence to *Bezdek* and *In re M3* despite being settlements, it noted that both cases "carefully evaluated the applicable consumer protection laws." Ex. 1, at

22. The district court here could not perform such an evaluation, because Petitioner failed to identify any of the relevant laws.

Petitioner closes this argument by suggesting that this court should defer to Massachusetts' supposed "significant interest" favoring consumer class actions, and its "fundamental public policy interests" in holding defendants "accountable for [their] conduct, which took place in Massachusetts." Pet. at 21 (alteration in original). But as discussed above, any interest Massachusetts has in favoring class actions is meaningless in this court, and its "public policy interests" do not favor application of its own law to out-of-state plaintiffs, as the district court noted. Moreover, Petitioner presented no evidence that any conduct took place in Massachusetts, and she presented no indication of what other jurisdictions' laws were implicated. By these failures, Petitioner did not give the district court the tools to engage in the "rigorous analysis" required by Rule 23.

## IV.    The District Court Correctly Determined that Plaintiff's Damages Model is Inapposite to Her Classwide Claims.

The district court's Order found that Plaintiff's full refund model would not be the most accurate measure of damages, and damages models seeking the full amount paid without accounting for residual value would overcompensate the class. Ex. 1 at 23-24. The Court therefore found that the full refund model was inapposite to Plaintiff's classwide claims. Petitioner's argument against the court's opinion fails to demonstrate any error.

17

Rule 23(b)'s predominance element "requires, in part, that plaintiffs establish at the class certification stage" that "damages are capable of measurement on a classwide basis" based on a methodology that is "just and reasonable" rather than "speculative." *Levy v. Gutierrez*, 448 F. Supp. 3d 46, 64 (D.N.H. 2019) (citing *Comcast Corp. v. Behrend*, 569 U.S. 27, 34-36 (2013)). Petitioner presented no cognizable damages model; her "model" was that the education was worthless, entitling all class members to a full refund of their tuition. How the omission of a nonexistent "attrition" metric from advertisements renders a medical education worthless is curious, and the district court rejected the theory, correctly noting that the purpose of Chapter 93A is not to punish or to provide a windfall. Ex. 1, at 23-24, citing *Hershenow v. Enterprise Rent-A-Car Company of Boston, Inc.*, 445 Mass. 790, 802 (2006). Finding that a damages model that ignored both "any benefit that students may have derived from the education they received" and "potential affirmative defenses" was "inapposite to Ortiz' classwide claims," the court refused to credit it. Ex. 1 at 24.

None of the authorities Petitioner cites to support her damages theory support applying it on a class-wide basis. The sole class action case she cites, *Makaeff v. Trump Univ.*, LLC, 309 F.R.D. 631, 639 (S.D. Cal. 2015), dealt with a fraudulent, unaccredited "university" that "did not include any of the core elements (an accredited university, instructors hand-picked by Trump, one year of expert

18

support and mentoring) [the students] purchased." *Makaeff*, 309 F.R.D. at 639. None of these are at issue here. Even in that case, the court decertified the class as to damages in the same opinion, finding that it was an inappropriate to measure damages without taking into account the defenses to those damages. *Id.* at 644.

All other cases Petitioner cites are not class actions. *Commonwealth v. Corinthian College*, an unreported case from Massachusetts, No. 2014-1093-E, at 2, 5 (Mass. Super. Aug. 1, 2016),[7] *F.T.C. v. Figgie Int'l, Inc.*, 994 F.2d 595, 605 (9th Cir. 1993), *F.T.C. v. Trudeau*, 579 F.3d 754, 772 (7th Cir. 2009), *McGregor v. Chierico*, 206 F.3d 1378, 1388 (11th Cir. 2000), and *F.T.C. v. Kuykendall*, 371 F.3d 745, 749 (10th Cir. 2004) were all government enforcement actions seeking restitution and had nothing to do with proof of damages in a certified class under Rule 23(b)(3).

Petitioner cannot demonstrate an error in refusing to apply that damages model to a class action when none of the cases it cites were class actions.[8] The argument does not support 23(f) review.

## CONCLUSION

Petitioner fails to demonstrate any basis for this Court's discretionary review

---

[7] *Vara v. DeVos*, 2020 WL 3489679, *1 (D. Mass. June 25, 2020) was a putative class action against the Secretary of Education under federal law and has nothing to do with this case. Petitioner cites it only because it refers to *Corinthian Colleges*, which is not available online as it was an unopposed enforcement action against a defunct college.

[8] Petitioner's new argument that she was damaged because by deprivation of a "meaningful choice" by Saba's advertisements (Pet. at 25 n. 8) was not raised below; she cannot raise it here.

19

of the district court's certification decision. Accordingly, Saba respectfully requests that this Court deny the Petition, and for such other and further relief as this Court deems just and appropriate.

*Saba University School of Medicine and R3 Education, Inc.,*

*Daryl J. Lapp*

Daryl J. Lapp (First Cir. Bar No. 31763)
LOCKE LORD LLP
111 Huntington Avenue, Boston, MA 02199
(617) 239-0100
daryl.lapp@lockelord.com

Michael McMorrow (First Cir. Bar No. 1214113)
LOCKE LORD LLP
111 S. Wacker Drive, Chicago, IL 60606
(312) 443-0246
michael.mcmorrow@lockelord.com

*Counsel for Defendants-Respondents R3 Education, Inc. and Saba University School of Medicine*

Dated: December 23, 2024

## CERTIFICATE OF COMPLIANCE

I certify that the foregoing Petition complies with Fed. R. App. P. 5(c) and 32(a). This document is proportionally spaced and complies with the typeface of 14-point font and length limitations, containing 5,173 words—exempting the parts of the document exempted by Rule 32(f).

*Daryl J. Lapp*
Daryl J. Lapp

## CERTIFICATE OF FILING AND SERVICE

I certify that on December 23, 2024, a copy of this Petition was filed *via* this Court's CM/ECF system and that all parties required to be served have been served.

*Daryl J. Lapp*
Daryl J. Lapp

# ATTACHMENT

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

```
_____
                                  )
NATALIA ORTIZ, on behalf of       )
herself and a class of similarly  )
situated persons,                 )
                                  )
                Plaintiff,        )
                                  )
        v.                        )          CIVIL ACTION
                                  )          No. 23-12002-WGY
SABA UNIVERSITY SCHOOL OF MEDICINE,)
R3 EDUCATION, INC.,               )
                                  )
                Defendants.       )
_____)
```

YOUNG, D.J.                                    November 26, 2024

### MEMORANDUM AND ORDER

I.    INTRODUCTION AND RELEVANT PROCEEDINGS

This decision illustrates the power of oral argument.  The
present complaint seeks class treatment for a claim of false
advertising, a type of claim that calls out for class treatment.
See Jordan Elias, The Multistate Problem in Consumer Class
Actions and Three Solutions, 17 Harv. L. & Pol'y Rev. 301
(2022).  On September 17, 2024, the Court held a full hearing
addressing the issue of class certification.  See Tr. Mot.
Certify Class, ECF No. 98.  In both her brief and at oral
argument, the plaintiff's counsel made a compelling argument

supporting class certification as to liability.[1]  Id.; Pl.'s Mem.

Supp. Mot. Class Cert. ("Pl.'s Mem."), ECF No. 51.  Undaunted,

_____

[1] Natalia Ortiz, a former student of Saba University School of Medicine, on behalf of herself and all those similarly situated (collectively, "Ortiz") moved for class certification under Federal Rule of Civil Procedure 23(b)(3).

On June 29, 2019, Ortiz sent a "Letter of Intent to Enroll" to R3 Education, Inc. seeking to enroll in Saba University School of Medicine ("Saba").  Mem. Supp. Defs.' Mot. Dismiss, Ex. A, Letter of Intent to Enroll & Tuition Deposit Form, ECF No. 16-1.  Ortiz began classes in September of 2019.  Compl. ¶ 77, ECF No. 1.

Saba is a for-profit medical school in the Dutch Caribbean, headquartered in Massachusetts, that caters mainly to students with comparatively low GPAs and MCAT scores.  Id. ¶¶ 1-2, 19, 22.  Generally, the first USMLE exam, USMLE Step 1, is taken after students complete their basic science courses in their first two years or five semesters of medical school, and the series of USMLE exams is required to be completed in order to obtain a medical license.  Id. ¶¶ 53-54.  The overall average passage rate for first-time USMLE Step 1 test takers from American and Canadian medical schools was 97% in 2019, 98% in 2020, 96% in 2021, and 93% in 2022.  Id. ¶ 56.

Ortiz alleges that Saba consistently advertised, since at least June 2015, that its students' passage rate for the USMLE Step 1 was 95-100%, and that Saba's Director of Admissions stated via e-mail to Ortiz that "virtually every Saba student passes the USMLE on their first attempt."  Id. ¶¶ 57, 60, 69-70, 74.  Ortiz alleges that this high passage rate was represented as indicative of the quality of Saba's education, id. ¶ 63, and that it was due to these high passage rates that she applied to Saba, id. ¶ 76.

Ortiz soon came to learn that in order for students at Saba to sit for the USMLE Step 1, they must first achieve a certain score on an internal Saba University pre-test.  Id. ¶ 87.  This was not something she was informed about prior to enrolling.  Id. ¶ 93.  On average, only 50% of students at Saba sit for the USMLE Step 1.  Id. ¶ 80.  In contrast, of students that matriculated at American medical schools in the period 2017-2019, 89.3% sat for the USMLE Step 1.  Id. ¶ 81.  Therefore, while an average of 85.6% of students at all American medical schools passed the USMLE on their first attempt, the vast majority of students sat for it.  Id.  In contrast, the near-100% pass rate that Saba advertised was based on the scores of

2

defense counsel focused on the difficulties in calculating damages and the concomitant administrative problems in administrating a worldwide class action. Tr. Mot. Certify Class 8-13.

Sensitive to the need -- present in every case, see Manual for Complex Litigation (Fourth) § 10.13 (2004); Robert H. Klonoff, The Decline of Class Actions, 90 Wash. U. L. Rev. 729, 756 (2013) -- to move the case along, the Court ruled from the bench and tentatively certified the following class:

> All individuals who enrolled at Saba from September 2017 to the date of the certification order in this matter who: 1) are no longer enrolled at Saba and 2) did not sit for the USMLE Step 1 exam. Excluded from the Class are: [Students who transferred credit to another school, or failed to pass a majority of the classes that they took]; Defendants, any entity in which Defendants have a controlling interest, and Defendants['] officers, directors, legal representatives, successors, and assigns.

---

the around only 50% of its students who sat for the exam. Id. ¶ 80.

Ortiz claims that she would not have taken out hefty student loans and matriculated at Saba if she had been aware that only half of Saba's students sat for the USMLE Step 1. Id. ¶ 84. After completing her first five semesters at Saba, Ortiz failed to pass the pre-test within three attempts and was dismissed in accordance with Saba's policies. Id. ¶¶ 95-96.

Ortiz brought this action on behalf of herself and others similarly situated, seeking damages from Saba University and other relief -- including an injunction against Saba's continuing its deceptive advertisement -- based on the claim that it misled her and other class members through its advertisements about its near-100% USMLE Step 1 pass rates while omitting that an average of only 50% of its students sit for Step 1. Id., Prayer for Relief.

[Proposed] Order Granting Pl.'s Mot. Class Cert., ECF No. 50-1; see Tr. Mot. Certify Class 13. It did so with the following caveat:

> That's the ruling of the Court. Subject to the risk that when I . . . write my opinion, I . . . conclude, on further review, that it just won't work and I decertify the class. . . . Obviously we're not sitting still, it's a dynamic. So if you have something to say, I'm writing the thing up, so feel free. . . . The rest of it you can put in writing.

Tr. Mot. Certify Class 14-16.

Saba, as is its right, promptly filed a petition seeking interlocutory review with the First Circuit. Fed. R. Civ. P. 23(f). In the meantime, this Court was writing up its certification decision -- and realized that decision was wrong. Because jurisdiction as to the order of class certification divests when the appeals court accepts the petition seeking interlocutory review, see In re Intuniv Antitrust Litig. (Indirect Purchasers), No. 16-CV-12396, 2019 WL 5789837, at *2 (D. Mass. Nov. 6, 2019) (Burroughs, J.); Schultz v. Emory Univ., No. 23-12929, 2024 WL 4534428, at *3 (11th Cir. Oct. 21, 2024); Amaya v. DGS Constr., LLC, No. TDC-16-3350, 2019 WL 1501584 (D. Md. Jan. 28, 2019), and since the First Circuit has not yet accepted jurisdiction over Saba's appeal, this Court has jurisdiction to decertify the class pursuant to Federal Rule of Civil Procedure 23(c)(1)(C), see City of Los Angeles, Harbor Div. v. Santa Monica Baykeeper, 254 F.3d 882, 886 (9th Cir.

4

2001) ("A district court therefore retains jurisdiction over an interlocutory order -- and thus may reconsider, rescind, or modify such an order -- until a court of appeals grants a party permission to appeal."); see also In re Terrorist Attacks on Sept. 11, 2001, No. 03-MDL-1570(GBD)(SN), 2024 WL 809887, at *2 n.3 (S.D.N.Y. Feb. 27, 2024); see generally Waste Mgmt. Holdings, Inc. v. Mowbray, 208 F.3d 288, 294 (1st Cir. 2000). Therefore, this Court here issues its memorandum of decision decertifying the class.

## II.   ANALYSIS

### A.   Legal Standard

"Rule 23 does not set forth a mere pleading standard.  A party seeking class certification must affirmatively demonstrate his compliance with the Rule -- that is, he must be prepared to prove that there are in fact sufficiently numerous parties, common questions of law or fact, etc." Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 350 (2011).

"To qualify for class certification under Rule 23, a plaintiff must demonstrate that: 1) there are so many class members that joinder of all members is impracticable; 2) common questions of law or fact exist among the class members; 3) the named plaintiff's claims or defenses are typical of those of the class; and 4) the named plaintiff will fairly and adequately represent the interests of the class." Wortman v. LogMeIn,

5

Inc., No. 18-11475-GAO, 2022 WL 3714620, at *1 (D. Mass. Aug. 29, 2022) (O'Toole, J.). These are also known as the Rule 23(a) requirements: (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation. See Fed. R. Civ. P. 23(a); Wal-Mart Stores, 564 U.S. at 349.

In addition affirmatively to establishing the Rule 23(a) requirements, the party seeking class certification must also establish one of the three grounds listed under Rule 23(b). See Amchem Prods. v. Windsor, 521 U.S. 591, 614 (1997); Smilow v. Southwestern Bell Mobile Sys., Inc., 323 F.3d 32, 38 (1st Cir. 2003). If challenged, the party seeking class certification must establish the facts underlying the Rule 23(a) and 23(b) requirements by a preponderance of the evidence. Messner v. Northshore Univ. HealthSystem, 669 F.3d 802, 811 (7th Cir. 2012); In re Nexium Antitrust Litig., 777 F.3d 9, 27 (1st Cir. 2015). "Once plaintiffs have made their initial showing, defendants have the burden of producing sufficient evidence to rebut the plaintiff's showing." In re Nexium, 777 F.3d at 27.

In reviewing requests for class certification, the district court must conduct a "rigorous analysis" which will "entail some overlap with the merits of the plaintiff's underlying claim." Wal-Mart Stores, 564 U.S. at 351 (quoting General Tel. Co. of Southwest v. Falcon, 457 U.S. 147, 161 (1982)). A court must not, however, "turn the class-certification proceeding into an

6

unwieldy trial on the merits." <u>In re PolyMedica Corp. Sec.</u>
<u>Litig.</u>, 432 F.3d 1, 17 (1st Cir. 2005).

    **A. Rule 23(a)**

      **1. Numerosity**

    For a class to be certified, it must be "so numerous that
joinder of all members is impracticable." Fed. R. Civ. P.
23(a)(1). Courts have routinely referred to this as the
"numerosity" requirement. <u>See, e.g.</u>, <u>Wal-Mart Stores</u>, 564 U.S.
at 349; <u>General Tel.</u>, 457 U.S. at 156. While there is no
minimum number of class members needed to satisfy this
requirement, as a general matter, courts have held that if the
moving party can establish that its class's potential members
exceed 40, the requirement has been met. <u>See, e.g.</u>, <u>Garcia-</u>
<u>Rubiera</u> v. <u>Calderon</u>, 570 F.3d 443, 460 (1st Cir. 2009) (quoting
<u>Stewart</u> v. <u>Abraham</u>, 275 F.3d 220, 226-27 (3d Cir. 2001)) ("No
minimum number of plaintiffs is required to maintain a suit as a
class action, but generally if the named plaintiff demonstrates
that the potential number of plaintiffs exceeds 40, the first
prong of Rule 23(a) has been met.").

    With Ortiz's proposed class definition, and based on Saba's
records of former students, at least 500 former students are
implicated in the class, establishing the impracticability of
joinder. <u>See</u> Pl.'s Mem. 9; Decl. Siller Supp. Pl.'s Mot. Class
Cert., Ex. 40, ECF No. 53-40; <u>id.</u>, Ex. 41, ECF No. 53-41.

Therefore, the numerosity requirement of Rule 23(a)(1) is satisfied.

### 2. Commonality

For a class to be certified, there must also be "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Courts have called this the "commonality" requirement. _See, e.g._, Wal-Mart Stores, 564 U.S. at 349; General Tel., 457 U.S. at 156. A question is common if it is "capable of classwide resolution -- which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." Wal-Mart Stores, 564 U.S. at 350; _see also_ Parent/Professional Advocacy League v. City of Springfield, 934 F.3d 13, 28 (1st Cir. 2019). At its crux, commonality is typically about "'a particular and sufficiently well-defined set of allegedly illegal policies [or] practices' that work similar harm on the class plaintiffs." Parent/Professional Advocacy League, 934 F.3d 13, 28 (alteration in original) (quoting Parsons v. Ryan, 754 F.3d 657, 679 (9th Cir. 2014)).

To meet this commonality standard, a class need not establish that every question of law or fact is identical; rather, the existence of a single significant common issue of fact or law is sufficient. In re Pharmaceutical Indus. Average Wholesale Price Litig., 230 F.R.D. 61, 78 (D. Mass. 2005)

8

(Saris, J.).  "The threshold of 'commonality' is not high."  Id.

(quoting Jenkins v. Raymark Indus., Inc., 782 F.2d 468, 472 (5th

Cir. 1986)).  "The existence of shared legal issues with

divergent factual predicates is sufficient, as is a common core

of salient facts coupled with disparate legal remedies within

the class."  Id. (quoting Hanlon v. Chrysler Corp., 150 F.3d

1011, 1019 (9th Cir. 1998)).

Ortiz has established a "common core of salient facts"

through identifying a significant, uniform representation made

by Saba University to all prospective students: the

institution's USMLE Step 1 pass rates.  See Compl. ¶¶ 58-66,

140.  Ortiz contends that this representation, made through

widely disseminated advertisements and standardized marketing

materials, was misleading.  See Pl.'s Mem. 10-11.  Consequently,

Ortiz has satisfied the commonality requirement under Rule

23(a)(2).

### 3. Typicality

For a class to be certified, "the claims or defenses of the

representative parties" must be "typical of the claims or

defenses of the class."  Fed. R. Civ. P. 23(a)(3).  Courts refer

to this as the "typicality" requirement.  See Wal-Mart Stores,

564 U.S. at 349; General Tel., 457 U.S. at 156.  This standard

is met when the plaintiff's "injuries arise from the same events

or course of conduct as do the injuries of the class, and . . .

its claims are based on the same legal theory as those of the class." In re Boston Sci. Corp. Sec. Litig., 604 F. Supp. 2d 275, 282 (D. Mass. 2009) (Woodlock, J.). Moreover, typicality is not a highly demanding requirement, and is met when there is "congruence between particular claims of the named class representatives and the generalized claims that are common to the class." Payne v. Goodyear Tire & Rubber Co., 216 F.R.D. 21, 26 (D. Mass. 2003) (Gertner, J.); see also In re Suffolk Univ. Covid Refund Litig., No. 20-10985, 2022 WL 6819485, at *1 (D. Mass. Oct. 11, 2022). Saba's arguments against typicality repeat the same arguments it makes regarding commonality. See Defs.' Mem. Opp'n Class Cert. ("Defs.' Mem.") 13 n.15, ECF No. 69.

Ortiz's claims are based on the same factual and legal premises as those of the proposed class members: both she and the class were allegedly harmed by the same marketing misrepresentations by Saba, and both allege harm under the same consumer protection laws. See In re Boston Sci. Corp., 604 F. Supp. 2d at 282. Ortiz, therefore, can "fairly and adequately pursue the interests of the absent class members without being sidetracked by her own particular concerns." Swack v. Credit Suisse First Boston, 230 F.R.D. 250, 264 (D. Mass. 2005) (Woodlock, J.).

### 4. Adequacy

The final requirement for class certification under Rule 23(a) is that "the representative parties . . . fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Courts commonly refer to this as the "adequacy of representation" requirement. See Wal-Mart Stores, 564 U.S. at 349; General Tel., 457 U.S. at 156.

To satisfy the adequacy requirement, the moving party must meet a two-step standard: "The moving party must show first that the interests of the representative party will not conflict with the interests of any of the class members, and second, that counsel chosen by the representative party is qualified, experienced and able to vigorously conduct the proposed litigation." Andrews v. Bechtel Power Corp., 780 F.2d 124, 130 (1st Cir. 1985).

Ortiz asserts that her claims, like those of the proposed class, are rooted in Saba University's representations regarding USMLE Step 1 pass rates. As alleged, Ortiz was induced to enroll by these same representations, which similarly impacted other class members. See Compl. ¶ 119-21. Therefore, her interests in addressing and redressing these alleged misrepresentations are aligned with those of the class. See In re Boston Sci. Corp., 604 F. Supp. 2d at 282.

11

Saba has not raised any specific challenges to the adequacy of Ortiz as class representative, nor has it contested the qualifications or experience of her counsel.  Accordingly, the Court finds that Ortiz has satisfied the adequacy requirement.

\*\*\*

For the reasons examined above, the Court holds that Ortiz successfully establishes the four requirements for class certification under Rule 23(a).  The Court next turns to an analysis of the Rule 23(b) requirements.

### B. Rule 23(b)(3) -- Predominance

Under Rule 23(b)(3), plaintiffs must demonstrate that "the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).  Rule 23(b)(3) contains two prongs, that is, the "requirements of predominance and superiority."  In re Boston Sci. Corp., 604 F. Supp. 2d at 282.  "The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation."  Amchem, 521 U.S. at 623.  "[T]he need for some individualized determinations at the liability and damages stage does not defeat class certification. . . .  Rather, the question is whether there is 'reason to think that [individualized]

12

questions will <u>overwhelm</u> common ones and render class
certification inappropriate[.]'" <u>In re Nexium</u>, 777 F.3d at 21
(quoting <u>Halliburton Co.</u> v. <u>Erica P. John Fund, Inc.</u>, 573 U.S.
258, 276 (2014)). The First Circuit has noted that, in
conducting a predominance inquiry, "a district court must
formulate some prediction as to how specific issues will play
out in order to determine whether common or individual issues
predominate in a given case." <u>Waste Mgmt. Holdings, Inc.</u> v.
<u>Mowbray</u>, 208 F.3d 288, 298 (1st Cir. 2000). "In order to obtain
class certification, a plaintiff at all times bears the burden
of demonstrating that the Rule 23 requirements have been
satisfied." <u>Southern States Police Benev. Ass'n, Inc.</u> v. <u>First</u>
<u>Choice Armor & Equip., Inc.</u>, 241 F.R.D. 85, 90 (D. Mass. 2007)
(Gorton, J.) (citing <u>Smilow</u>, 323 F.3d at 38; <u>Swack</u>, 230 F.R.D.
at 257).

### 1. Choice-of-Law

The presence of divergent state laws can "swamp any common
issues and defeat predominance"; therefore, the Court must
determine which states' laws govern the claims of the class
members in order to conduct its predominance analysis. <u>In re</u>
<u>Nexium (Esomeprazole) Antitrust Litig.</u>, 297 F.R.D. 168, 175 (D.
Mass. 2013) (quoting <u>Mowbray</u> v. <u>Waste Mgmt. Holdings, Inc.</u>, 189
F.R.D. 194, 199 (D. Mass. 1999)), <u>aff'd</u>, 777 F.3d 9 (1st Cir.
2015). This requires an initial assessment of whether a genuine

conflict exists among the potentially applicable state laws that
could defeat predominance. See, e.g., Powers v. Lycoming
Engines, 328 F. App'x 121, 124 (3d Cir. 2009); Senne v. Kansas
City Royals Baseball Corp., 934 F.3d 918, 928 (9th Cir. 2019);
Johnson v. Nextel Commc'ns Inc., 780 F.3d 128, 140 (2d Cir.
2015); Hale v. Emerson Elec. Co., 942 F.3d 401, 404 (8th Cir.
2019); see also In re Bridgestone/Firestone, Inc., 288 F.3d
1012, 1017-18 (7th Cir. 2002).

Plaintiffs seeking class certification bear the burden of
conducting a "rigorous analysis" of the relevant laws of the
states at issue, particularly when the claims involve plaintiffs
from multiple jurisdictions. In re M3 Power Razor Sys. Mktg. &
Sales Prac. Litig., 270 F.R.D. 45, 57 (D. Mass. 2010) (Woodlock,
J.); see also Gariety v. Grant Thornton, LLP, 368 F.3d 356, 370
(4th Cir. 2004). Courts have repeatedly held that the
predominance requirement cannot be met "when the various laws
have not been identified and compared." Gariety, 368 F.3d at
370; see also Grandalski v. Quest Diagnostics Inc., 767 F.3d
175, 180 (3d Cir. 2014); Southern States, 241 F.R.D. at 90
(discussing plaintiffs' burden of demonstrating that variations
in state law do not defeat predominance).

In opposing class certification, Saba highlights numerous
material differences between the law of Massachusetts and other
states' consumer protection laws. See Defs.' Mem. 5 & nn.7-10.

14

The state laws cited include some that require a showing of reliance on representations, and one state which only permits suit to be brought for affirmative misrepresentations.  Id. (citing Correa v. Pecos Valley Dev. Corp., 617 P.2d 767, 771 (Ariz. Ct. App. 1980) ("Injury occurs when the consumer relies on the misrepresentation . . . ."); Weinberg v. Sun Co., Inc., 777 A.2d 442, 446 (Pa. 2001); Cruz v. Andrews Restoration, Inc., 364 S.W.3d 817, 823-24 (Tex. 2012); Adardour v. American Settlements Inc., 2009 WL 1971458, at *3 (E.D. Va. 2009); Tietsworth v. Harley-Davidson, Inc., 677 N.W.2d 233, 245 (Wis. 2004) ("Silence -- an omission to speak -- is insufficient to support a claim under Wis. Stat. § 100.18(1).")).  This materially differs from a claim under the Massachusetts consumer protection statute, which only requires a showing that the alleged misrepresentation "'caused' an identifiable 'harm,'" and which permits claims based on omissions.  Shaulis v. Nordstrom, Inc., 865 F.3d 1, 6 (1st Cir. 2017) (quoting Shaulis v. Nordstrom Inc., 120 F. Supp. 3d 40, 50 (D. Mass. 2015) (Saylor, J.)).  The parties do not dispute that a material conflict exists between Massachusetts law and the laws of the class members' home states.  These discrepancies underscore the challenge plaintiffs face in proving that common questions of law predominate across a nationwide class.

15

Despite these challenges, Ortiz attempts to circumvent the need for a detailed comparison of state laws by asserting that Massachusetts law should apply uniformly to the entire proposed class. See Pl.'s Mem. 15. Her argument hinges on the premise that in conducting a "functional" choice-of-law analysis, this Court will find that Massachusetts has the most significant relationship to the plaintiffs' claims, and that Massachusetts has a strong interest in regulating business conduct within its borders.

Nevertheless, after finding "at least one potentially relevant difference among the state laws," this Court is guided to undertake a choice-of-law analysis. DaSilva v. Border Transfer of MA, Inc., 296 F.Supp.3d 389, 399 (D. Mass. 2017) (Saris, J.). Since subject matter jurisdiction is grounded in diversity, the Court applies the choice-of-law rules of the forum state -- here, Massachusetts. Viscito v. National Plan. Corp., 34 F.4th 78, 83 (1st Cir. 2022); see also Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496-97 (1941). Massachusetts applies a "functional approach to choice of law." Dahua Tech. USA Inc. v. Feng Zhang, 988 F.3d 531, 538 (1st Cir. 2021) (citing Cosme v. Whitin Mach. Works, Inc., 417 Mass. 643, 645 (1994)). To conduct this analysis, courts are "explicitly guided" by the Restatement (Second) of Conflict of Laws ("Restatement"). Viscito, 34 F.4th at 83 (quoting UBS Fin.

16

_Servs., Inc._ v. _Aliberti_, 483 Mass. 396, 405 n.12 (2019)).
"Although Section 9 of the Massachusetts Consumer Protection Act
has no textual constraints on its application, Massachusetts
choice-of-law principles are not so unlimited."  _Camey_ v. _Force_
_Factor, LLC_, No. 14-14717-RWZ, 2016 WL 10998440, at *3 (D. Mass.
May 16, 2016) (Zobel, J.).  Guided by the Restatement, in a
consumer fraud case courts look to which state has the "most
significant relationship" to the claim and to the parties.  _In_
_re Pharmaceutical_, 230 F.R.D. at 82 n. 21.

In determining which state has the most significant
relationship to a nationwide consumer fraud claim, the Court is
guided by the factors set forth in Section 148(2) of the
Restatement.  _Id._ at 82-83; _Conway_ v. _Planet Fitness Holdings,_
_LLC_, 101 Mass. App. Ct. 89, 97-99 (2022); _Camey_, 2016 WL
10998440, at *3; _Downing_ v. _Keurig Green Mountain, Inc._, No. 20-
CV-11673, 2021 WL 2403811, at *7-8 (D. Mass. June 11, 2021)
(Talwani, J.).  Section 148(2) lists six contacts to be
considered:

> (a) the place, or places, where the plaintiff acted in
> reliance upon the defendant's representations; (b) the
> place where the plaintiff received the
> representations; (c) the place where the defendant
> made the representations; (d) the domicil, residence,
> nationality, place of incorporation and place of
> business of the parties; (e) the place where a
> tangible thing which is the subject of the transaction
> between the parties was situated at the time, and (f)
> the place where the plaintiff is to render performance

under a contract which he has been induced to enter by the false representations of the defendant.

Restatement § 148(2) (1971).  These choice-influencing factors are to be considered in light of the overarching principles set forth by Section 6 of the Restatement.  Restatement § 148 cmt. e.[2]

The parties disagree on the application of Restatement § 148, with Ortiz stating that Section 148 has "no applicability in the Chapter 93A context because 'reliance' is not a component of a Chapter 93A claim."  Pl.'s Reply Supp. Class Cert. ("Pl.'s Reply") 8 n. 22, ECF No. 82.  Nevertheless, this preemptively assumes the application of Massachusetts law.  When conducting a choice-of-law analysis, the Court is explicitly guided by the Restatement's sections 148 and 6, which require a neutral analysis of the implicated states' laws.

---

[2] Section 148's "Comment on Subsection 2" provides that the "relative importance" of the factors "in a given case should be determined in light of the choice-of-law principles stated in § 6."  Restatement § 148 cmt. e.  Section 6 lists seven principles for a court to consider: (1) the needs of the interstate and international systems, (2) the relevant policies of the forum, (3) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue, (4) the protection of justified expectations, (5) the basic policies underlying the particular field of law, (6) certainty, predictability and uniformity of result, and (7) ease in the determination and application of the law to be applied.  Restatement § 6(2).  Comment c to Section 6, however, makes clear that this list is not to be considered exclusive, and that courts will "[u]ndoubtedly" give consideration to factors not listed.  Restatement § 6 cmt. c.

18

Here, the alleged misrepresentations were created and
disseminated from Massachusetts, and the class members received
and acted in reliance on Saba's alleged misrepresentations in
their home states.[3] Ortiz has not specifically identified the
states where class members are domiciled, but it is undisputed
that potential plaintiffs are disbursed worldwide.[4] As explained
in the commentary to Restatement § 148, while the place where
the defendant made the representations is "approximately as
important" as the place where the plaintiff received the
representations, the place where the plaintiff relied on a
defendant's alleged misrepresentation is "more important."
Restatement § 148 cmt. g.[5] Furthermore, when a plaintiff
received and relied on representations in a single state, that

---

[3] While reliance is not a per se requirement for a claim
under Chapter 93A, the language of Chapter 93A refers to
reliance. See Mass. Gen. Laws ch. 93A, § 9 (requiring a demand
for relief "reasonably describing the unfair or deceptive act or
practice relied upon and the injury suffered"). For the purpose
of conducting a functional choice-of-law analysis as directed by
the Massachusetts Supreme Judicial Court, the location that
formed the basis for the plaintiffs' causal relationship to the
alleged misrepresentations will be construed as the place of
reliance.

[4] Defs.' Mem. 2 (explaining that former students implicated
in the class come from "40 states, the District of Columbia,
Puerto Rico, and at least 13 foreign nations.")

[5] "[T]he place where a plaintiff acted in reliance on
defendant's representations is more important than the place
where the defendant made or the plaintiff received the
representations." Restatement § 148 cmt. g.

state's laws will generally apply. Restatement § 148 cmt. j.[6]
Factor five is not applicable here, and factor six points to
Massachusetts, but this contact is not as relevant as where the
plaintiff relied on the representations. See id. Accordingly,
as the plaintiffs received and relied on the alleged
misrepresentations in their home states, the guiding factors of
Section 148(2) point to the application of the laws of the
plaintiffs' home states.

Furthermore, this court is guided to analyze these factors
in light of Restatement § 6. Recognizing the risk of
conflicting with other states' policies, courts in this district
have followed an "unbroken string of opinions" declining to
extend Chapter 93A to multi-state classes. Camey, 2016 WL
10998440, at *2-3; see, e.g., In re Pharmaceutical, 230 F.R.D.
at 83; Downing, 2021 WL 2403811, at *8; Faherty v. CVS Pharmacy,
Inc., No. 09-CV-12102, 2011 WL 810178, at *5 (D. Mass. Mar. 9,
2011) (Stearns, J.); Southern States, 241 F.R.D. at 93; Feingold
v. John Hancock Life Ins. Co. (USA), No. 13-CV-10185, 2013 WL
4495126, at *3 (D. Mass. Aug. 19, 2013) (Tauro, J.), aff'd, 753

--------

[6] When a "plaintiff acted in reliance upon the defendant's
representations in a single state, this state will usually be
the state of the applicable law, with respect to most issues, if
(a) the defendant's representations were received by the
plaintiff in this state, or (b) this state is the state of the
plaintiff's domicile or principal place of business."
Restatement § 148 cmt. j.

F.3d 55 (1st Cir. 2014).  This is in part because each state
involved has an interest in applying its own consumer protection
laws to transactions within its borders.  Restatement 148 cmt.
i.[7]

Applying Massachusetts law across all states in this action
could undermine these local interests by limiting each state's
ability to enforce its standards.  Thus, to avoid imposing
inconsistent liability standards across jurisdictions, the Court
cannot disregard each state's regulatory framework for consumer
protection.  In re Pharmaceutical, 230 F.R.D. at 83 (collecting
cases rejecting application of the law of a defendant's
principal place of business to a nationwide class).  Although
applying Massachusetts law to a Massachusetts defendant would
significantly simplify the choice-of-law determination, a
"tempting" proposition, it is well established that "under the
Restatement, the laws of the home states of the consumers
govern."  Id.

---

[7] "The plaintiff's domicil or residence, if he is a natural
person, or the principal place of business, if plaintiff is a
corporation, are contacts of substantial significance when the
loss is pecuniary in its nature, as is true of the situations
covered by the rule of this Section. This is so because a
financial loss will usually be of greatest concern to the state
with which the person suffering the loss has the closest
relationship."  Restatement § 148 cmt. i.

Although courts in this district have permitted nationwide class certification under Chapter 93A in the Bezdek and In re M3 cases, these cases involved **settlement** classes. Bezdek v. Vibram USA, 79 F. Supp. 3d 324 (D. Mass. 2015) (Woodlock, J.), aff'd, 809 F.3d 78 (1st Cir. 2015); In re M3 Power Razor, 270 F.R.D. Moreover, while the courts in Bezdek and In re M3 took a "common sense approach" to certifying the settlement class, the courts still carefully evaluated the applicable consumer protection laws as analyzed by the parties, and found that the variations in state law relating to the plaintiffs' claims did not "overcome the common factual and legal issues shared by the potential class members." In re M3 Power Razor, 270 F.R.D. at 61, 64. The court in In re M3 noted that courts must conduct a "rigorous analysis" of the varying state laws before certifying a class. Id. at 57.

Here, Ortiz has not conducted any analysis of state law variation, and therefore fails to meet her burden of demonstrating that the variations in state laws do not overcome common legal issues. See Southern States, 241 F.R.D. at 90. Consequently, the predominance of individual state laws poses significant barriers to a uniform application of Chapter 93A. In re M3 Power Razor, 270 F.R.D. at 57 (collecting cases explaining that "a rigorous analysis of state law variation must precede class certification.").

22

Ultimately, Massachusetts choice-of-law principles consistently favor applying the consumer's home state laws to consumer fraud claims.  Applying Chapter 93A broadly to a nationwide class would undermine these principles and impair the regulatory authority of states outside Massachusetts.  Accordingly, in conducting a comprehensive, functional choice-of-law analysis, the Court holds that the plaintiff has failed to meet her burden of demonstrating that Massachusetts law applies to the plaintiffs' claims.

### A.    Damages

Saba argues that Ortiz's "damages theory is unworkable on a class basis" because Ortiz has failed "to demonstrate: (1) any cognizable theory to calculate damages on a class basis; (2) that she or any class member has standing in this case; or (3) that any injury was caused by the USMLE Step 1 first-time pass rates advertisements."  Defs.' Mem. 6-7.  Ortiz has requested that damages be calculated as the "tuition, fees, and costs of attending Saba" that class members paid.  Pl.'s Reply 9.

While Ortiz has argued for a full refund of tuition and fees as damages, claiming that the entire educational experience was premised on the promise of a high likelihood of licensure, the Court finds that a full refund model would not be the most accurate measure of damages.  Under Massachusetts law, Chapter 93A aims to make plaintiffs whole by compensating for the actual

23

harm caused by the defendant's conduct, not to punish or to provide a windfall.  See Hershenow v. Enterprise Rent-A-Car Co. of Bos., 445 Mass. 790, 802 (2006) ("A consumer is not, however, entitled to redress under G.L. c. 93A, where no loss has occurred.").

Additionally, the Court is mindful of precedents that have assessed damages in similar contexts.  For example, in the cases Spangler and Makaeff, the court determined that damages models seeking the full amount paid without accounting for residual value would effectively overcompensate the class, ignoring any benefit that students may have derived from the education they received, and ignoring potential affirmative defenses the defendants could raise as to individual plaintiffs.  See Spangler v. National Coll. of Tech. Instruction, No. 14-CV-3005, 2016 WL 11772282, at *9-10 (S.D. Cal. May 19, 2016); Makaeff v. Trump Univ., LLC, 309 F.R.D. 631, 634 (S.D. Cal. 2015). Applying this principle, although Ortiz alleges that the program's failure to deliver on licensure resulted in students' education being worthless, because Saba University still provided education which could have led to licensure, this may have conferred some value on its students.  Therefore, the Court finds that the full refund model is inapposite to Ortiz's classwide claims.

24

## III. CONCLUSION

Because the laws of multiple jurisdictions apply to this putative worldwide class of consumers, the differences in state and national laws predominate over common issues, leaving the predominance requirement of 23(b)(3) unsatisfied. As a result, certification of the nationwide class is precluded, and the class must be decertified. <u>But see</u> Elias, <u>supra</u>, at 343 (decrying this result on this ground because it "not only causes injustice but also weakens deterrence of corporate misconduct"). The Court decertifies the class. Ortiz's motion for class notice is denied as moot, and Saba's motion to stay proceedings pending the resolution of the appeal is likewise denied as moot.

"The point is simply that in a large class action such as this, management for trial is a dynamic process, one which requires constant reevaluation and adjustment." <u>In re Nexium (Esomeprazole)</u>, 297 F.R.D. at 183 (footnote omitted).

**So ordered,**

WILLIAM G. YOUNG
JUDGE
of the
UNITED STATES[8]

---

[8] This is how my predecessor, Peleg Sprague (D. Mass. 1841–1865), would sign official documents. Now that I'm a Senior District Judge I adopt this format in honor of all the judicial colleagues, state and federal, with whom I have had the privilege to serve over the past 46 years.